### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK
### MANHATTAN COURTHOUSE

Alex Morales, individually and on behalf of all others similarly situated,

                Plaintiff,

        - against -

Apple, Inc.,

                Defendant

1:22-cv-10872

Class Action Complaint

Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.     Apple, Inc. ("Defendant") manufactures, markets, and sells the Apple Watch, purporting to measure the oxygen level of a wearer's blood directly from their wrist ("Product").

2.     The interest in blood oxygen levels extends began at least two hundred years ago hot air balloon flyers and mountain climbers needed to ensure survival.

3.     Later, these groups included astronauts, pilots and divers.

4.     The early devices, were used in a person's ear, used light-based technology or spectrophotometry to measure oxygen levels.

5.     In the 1970s, a fingertip oximeter was invented that was easier to use than its predecessors.

6.     For decades, there have been reports that such devices were significantly less accurate in measuring blood oxygen levels based on skin color.

7.     The "real world significance" of this bias lay unaddressed until the middle of the Coronavirus pandemic, which converged with a greater awareness of structural racism which exists in many aspects of society.

8.      Researchers confirmed the clinical significance of racial bias of pulse oximetry using records of patients taken during and before the pandemic.

9.      The conclusion was that "reliance on pulse oximetry to triage patients and adjust supplemental oxygen levels may place Black patients at increased risk for hypoxemia."

10.      Since health care recommendations are based on readings of their blood oxygen levels, white patients are more able to obtain care than those with darker skin when faced with equally low blood oxygenation.

11.      While traditional fingertip pulse oximeters are capable of measuring blood oxygen levels and heart rate, wrist-worn devices like the Product determine heart rate, as blood oxygen measurements from the wrist are believed inaccurate.

12.      Algorithms designed for fingertip sensing are inappropriate when based on wrist measurements, and can lead to over 90% of readings being unusable.

13.      Though one recent study concluded the Product was able to detect reduced blood oxygen saturation in comparison to medical-grade pulse oximeters this fails to recognize the failings of pulse oximetry in general with respect to persons of color.

14.      As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $400, excluding tax and sales.

<u>Jurisdiction and Venue</u>

15.      Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

16.      The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

17.      Plaintiff is a citizen of New York.

18.    Defendant is a California corporation with a principal place of business in California.

19.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

20.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores and over the internet, in the States Plaintiff seeks to represent.

21.    Venue is in this District with assignment to the Manhattan Courthouse because Plaintiff resides in New York County and substantial part of the events or omissions giving rise to these claims occurred here, including the purchase and/or awareness of the issues identified.

<u>Parties</u>

22.    Plaintiff Alex Morales is a citizen of New York, New York County, New York.

23.    Defendant Apple, Inc. is a California corporation with a principal place of business in Cupertino, Santa Clara County, California.

24.    Plaintiff purchased the Product between 2020 and 2021.

25.    Plaintiff was aware the Product purported to measure blood oxygen levels and he believed it did this without regard to skin tone, which was relevant to him based on his skin tone.

26.    Plaintiff expected the Product would not incorporate biases and defects of pulse oximetry with respect to persons of darker skin tone.

27.    Plaintiff bought the Product at or exceeding the above-referenced price.

28.    Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it.

29.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

## Class Allegations

30.   Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, Arkansas, North Carolina and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

31.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

32.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

33.   Plaintiff is an adequate representative because his interests do not conflict with other members.

34.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

35.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

36.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## New York General Business Law ("GBL") §§ 349 and 350

37.   Plaintiff incorporates by reference all preceding paragraphs.

38.   Plaintiff saw and relied on the label and expected the Product did not incorporate

biases and defects of pulse oximetry with respect to persons of darker skin tone.

39.     Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts<br>(Consumer Fraud Multi-State Class)

40.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

41.     The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

42.     Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,<br>Implied Warranty of Merchantability/Fitness for a Particular Purpose<br>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq.</em>

43.     The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it did not incorporate biases and defects of pulse oximetry with respect to persons of darker skin tone.

44.     Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

45.     Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was a device that did not consider a person's ethnicity and skin color for adequate functioning.

46.     The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it did not incorporate biases and defects of pulse oximetry with respect to persons of darker skin tone.

47.     Defendant's representations affirmed and promised that it did not incorporate biases and defects of pulse oximetry with respect to persons of darker skin tone.

48.     Defendant described the Product so Plaintiff believed it did not incorporate biases and defects of pulse oximetry with respect to persons of darker skin tone, which became part of the basis of the bargain that it would conform to its affirmations and promises.

49.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

50.     This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Apple brand, known for its support of progressive causes.

51.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

52.     Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

53.     Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

54.     The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

55.     The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was

marketed as if it did not incorporate biases and defects of pulse oximetry with respect to persons of darker skin tone.

56.     The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected that it did not incorporate biases and defects of pulse oximetry with respect to persons of darker skin tone, and he relied on its skill and judgment to select or furnish such a suitable product.

<u>Fraud</u>

57.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it did not incorporate biases and defects of pulse oximetry with respect to persons of darker skin tone.

<u>Unjust Enrichment</u>

58.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated:   December 24, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.

60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com